## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES RICHARD TUBEROSA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,<br><br>　　　　　Defendant. | Civil Action No. 25-963 (BAH)<br><br>Judge Beryl A. Howell |

## MEMORANDUM OPINION

In April 2025, plaintiff James Richard Tuberosa, a securities broker formerly registered with the Financial Industry Regulatory Authority ("FINRA"), initiated this suit against FINRA seeking to expunge six customer disputes from his registration records. Plaintiff's legal bases for the expungement relief sought are asserted in three counts: (1) "Equitable Relief for Expungement," Compl. ¶¶ 145-163, ECF No. 1; (2) "Declaratory Judgment for Expungement" under 28 U.S.C. § 2201, *id.* ¶¶ 164-177; and (3) "Permanent Injunction," *id.* ¶¶ 178-184. Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that plaintiff's complaint fails to identify a cognizable cause of action against FINRA that would entitle him to expungement relief. For the reasons discussed below, defendant's motion is granted.

## I.    BACKGROUND

Following a brief review of the regulatory framework from which this lawsuit arises, the factual and procedural history of this case is summarized.

### A.    Legal Framework

The Securities Exchange Act of 1934 (the "Exchange Act") "vests registered national securities associations with a prominent role in the administration and enforcement of federal

securities law." *Turbeville v. FINRA*, 874 F.3d 1268, 1270 (11th Cir. 2017); *see also* Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*; Maloney Act of 1938, 15 U.S.C. §§ 78o-3 *et seq.* (amending the Exchange Act).   FINRA, a private, not-for-profit self-regulatory organization ("SRO"), is one such national securities association registered with the Securities and Exchange Commission ("SEC").   *Turbeville*, 874 F.3d at 1270; *see also* 15 U.S.C. §§ 78c(a)(26).

FINRA is "responsible for regulatory oversight of all securities firms that do business with the public; professional training, testing and licensing of registered persons; [and] arbitration and mediation." *Sacks v. SEC*, 648 F.3d 945, 948 (9th Cir. 2011) (quoting SEC Release No. 34-56145, 72 Fed. Reg. 42169, 42170 (Aug. 1, 2007)).   "To achieve its objectives, FINRA may propose rules"—subject to approval by the SEC—"aimed at governing its member firms and associated individuals." *Id.* at 948 (citing 15 U.S.C. § 78s(b)(1), 17 C.F.R. § 200.30-3(a)(12)).   "Securities brokers who wish to join a FINRA-affiliated firm must pass FINRA-administered examinations and comport their professional conduct with the rules, regulations, and standards FINRA promulgates." *Turbeville*, 874 F.3d at 1271.

Among its mandates under the Exchange Act, FINRA is required to "establish and maintain a system for collecting and retaining registration information," 15 U.S.C. § 78o-3(i)(1)(A), defined as "information reported in connection with the registration or licensing of brokers and dealers and their associated persons, including disciplinary actions, regulatory, judicial, and arbitration proceedings, and other information required by law, or exchange or association rule, and the source and status of such information," *id.* § 78o-3(i)(5).   The Exchange Act also requires "[e]ach registered securities association [to] adopt rules establishing an administrative process for disputing the accuracy of information provided" that the Act requires to be collected. *Id.* § 78o-3(i)(3).

2

Consistent with its statutory duties, FINRA maintains the registration information it collects in an electronic database known as the Central Registration Depository ("CRD"), and makes certain CRD information from current and former FINRA members publicly available through FINRA's online investor protection tool, "BrokerCheck." *See* SEC Release No. 34-62476, 75 Fed. Reg. 41254, 41254 (Jul. 15, 2010). As relevant here, information disclosed on BrokerCheck includes summary descriptions of complaints lodged by aggrieved customers against individual brokers alleged to have committed sales practice violations, known as "customer dispute" information. *See* Def.'s Mot. to Dismiss, Ex. 1, ECF No. 16-3 (hereinafter, "BrokerCheck Report"). The SEC has stated that the "completeness of information in the CRD, including accurate customer dispute information, is critical for the protection of investors and effective regulatory oversight." SEC Release No. 34-72649, 79 Fed. Reg. 43809, 43812 (Jul. 22, 2014). These disclosures in the CRD, as the SEC has explained, "protect investors," "safeguard the markets," and "help [broker-dealer firms] make informed employment decisions." SEC Release No. 34-95455, 87 Fed. Reg. 50170, 50172 (Aug. 9, 2022). As "[b]oth regulators and the investing public are disadvantaged when factual information is removed from the CRD," the SEC has cautioned "that the expungement of customer dispute information is an extraordinary remedy that is permitted only in the appropriate narrow circumstances contemplated by FINRA rules." 79 Fed. Reg. at 43812-13.

The ability to expunge customer dispute information from the CRD system, therefore, is limited. Under FINRA Rule 2080, "[m]embers or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief." FINRA Rule 2080(a). FINRA Rule 13805, in turn, provides

detailed arbitration procedures that "appl[y] to all requests to expunge customer dispute information from the CRD system."  As an additional non-expungement remedy, FINRA also gives regulated parties the opportunity to submit "Broker Comments" explaining or providing additional context to the customer dispute information disclosed in their BrokerCheck reports.  *See* FINRA Rule 8312(b)(2)(D).

### B.    Factual and Procedural Background

The relevant facts, as plaintiff alleges and as available in FINRA's BrokerCheck Report, are as follows.  *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true."); *Langeman v. Garland*, 88 F.4th 289, 292 (D.C. Cir. 2023) ("[P]ublic records are subject to judicial notice on a motion to dismiss when referred to in the complaint and integral to the plaintiff's claim.").

Plaintiff has been a financial services professional since 1984, when he first registered with FINRA.  *See* Compl. ¶ 5, ECF No. 1; BrokerCheck Report at 5.  Before his FINRA registration was terminated in 2022, BrokerCheck Report at 7, plaintiff had been "registered with other FINRA and SEC registered investment adviser and broker-dealer firms," Compl. ¶ 53—nine member firms in total, *see* BrokerCheck Report at 5.  During these 37 years, plaintiff amassed eighteen "disclosure events," including fourteen customer complaints, two regulatory fines, and two terminations from his employing firms in 1988 and 2022.  *Id.* at 9.  Plaintiff has not been registered with FINRA or associated with a FINRA registered firm since 2022.  *Id.*; *see also* Compl. ¶ 5.

On April 2, 2025, plaintiff filed the instant action seeking to expunge the disclosures of six "customer disputes" from his BrokerCheck report.  Compl. at 1.  These disclosures arise from complaints lodged against plaintiff by his former clients, and reported to FINRA by plaintiff's employing firms between 2002 and 2018 in compliance with their statutory obligations.  *See id.* at 1, ¶¶ 54-144.  Plaintiff alleges that in three of the six disclosed disputes, the customers did not

pursue their complaints in arbitration or court after the employing firm denied the claims. *Id.* ¶ 66 (Occurrence No. 1059790); ¶ 98 (Occurrence No. 1452807), ¶ 111 (Occurrence No. 1485168). With respect to two other disclosed disputes, plaintiff alleges that the employing firm reported the dispute despite the customers purportedly "adamantly" stating "in writing" that they were "not complaining." *Id.* ¶ 80 (Occurrence No. 1429606), ¶ 127 (Occurrence No. 1744882). As to the last disputed disclosure, plaintiff states that the complaining customers settled in arbitration for "a fraction of the amount sought" and plaintiff himself "did not contribute to the settlement amount" and "did not receive, review, or sign the settlement agreement." *Id.* ¶ 144 (Occurrence No. 1968859). Plaintiff has submitted Broker Comments for four of these six disclosures, *see* BrokerCheck Report at 18, 27-31, but otherwise does not allege having taken any other action with respect to these disclosures prior to filing the instant action.

Plaintiff asserts that "FINRA's continued publication of the Occurrences does not benefit the public, nor does it provide meaningful information for employers or regulators," and that any "benefit to the public or regulators . . . is substantially outweighed by the harm to Mr. Tuberosa's personal and professional reputation." Comp. ¶ 157. He alleges he "is suffering real, ongoing, and continuous harm with the Occurrences' continued publication as it causes compounding injury over time and each potential client or employer who views the disclosure represents a new instance of harm that cannot be quantified or compensated through monetary damages." *Id.* ¶ 158.

Plaintiff brings three counts: (1) "Equitable Relief for Expungement," *id.* ¶¶ 145-163; (2) "Declaratory Judgment for Expungement" under 28 U.S.C. § 2201, *id.* ¶¶ 164-177; and (3) Permanent Injunction, *id.* ¶¶ 178-184. Plaintiff invokes the Court's subject matter jurisdiction under Section 27(a) of the Exchange Act, which he notes "grants the federal district courts 'exclusive jurisdiction' over 'all suits in equity and actions at law brought to enforce any liability

or duty created by [the Exchange Act] or the rules and regulations thereunder.'" *Id.* ¶ 1 (quoting 15 U.S.C § 78aa(a)). As relief, plaintiff requests that the Court "declar[e] his right to expungement," "direct[] FINRA to expunge," and "enjoin[] FINRA from continuing to publish any and all references" to the challenged disclosures. Compl. (Relief Requested).

Defendant has now moved to dismiss plaintiff's complaint, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted, *see* Def.'s Mot. to Dismiss, ECF No. 16; Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem."), ECF No. 16-1, which motion is now ripe for resolution, *see* Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 18; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 19.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]or the purposes of a motion to dismiss[,] [a court] must take all of the factual allegations in the complaint as true." *Id.* Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Importantly, "[w]hether [a] complaint states a cause of action on which relief could be granted is a question of law," and a complaint that asserts no cause of action "should be dismissed for failure to state a claim." *John Doe v. Metro. Police Dep't of D.C.*, 445 F.3d 460, 466 (D.C. Cir. 2006) (citation omitted); *see also Town v. U.S. Dep't of the Interior*, No. 22-5314, 2025 WL 1446027, at *1 (D.C. Cir. May 20, 2025) (per curiam) ("To survive dismissal, the complaint was required to identify a statute or other source of law that authorizes suit and affords the relief sought.").

## III.    DISCUSSION

Plaintiff opposes the motion to dismiss, arguing that he has sufficiently stated a claim for relief under FINRA's rules and the Court's inherent equitable powers.  Pl.'s Opp'n at 2-14. Plaintiff also, in the alternative, requests leave to amend his complaint.  *Id.* at 14-15.  The following sections will address each argument in turn, granting defendant's motion to dismiss, *see* Part A, and denying plaintiff's request for leave to amend his complaint, *see* Part B.

### A.    Motion to Dismiss Under Rule 12(b)(6)

As noted, plaintiff asserts three claims, all seeking the same expungement relief: (1) "Equitable Relief for Expungement," Compl. ¶¶ 145-163; (2) "Declaratory Judgment for Expungement" under 28 U.S.C. §2201, *id.* ¶¶ 164-177; and (3) "Permanent Injunction," *id.* ¶¶ 178-184.  Defendant contends that the complaint's "three bases for this extraordinary relief" of expungement "are not claims; rather they are *remedies* that presuppose—and require—a cognizable cause of action," which plaintiff "has not alleged."  Def.'s Mem. at 2 (emphasis in original).  As explained below, defendant is correct.

#### 1.   *The Exchange Act and FINRA Rule 2080*

Defendant argues that "FINRA is required to maintain and disclose [plaintiff's] registration information under federal law, and there is no private right of action against FINRA for expungement."  *Id.* at 2.  Plaintiff's complaint, defendant further contends, asserts only remedies in the form of equitable expungement, declaratory judgment, and permanent injunction, "rather than any independent cause of action."  *Id.* at 13 (capitalization altered).  In response, plaintiff's primary argument is that "FINRA's own Rule 2080" provides the basis for his suit, as Rule 2080 "states that one who seeks to expunge information from the CRD system 'must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.'"  Pl.'s Opp'n at 1.  In plaintiff's view, because Rule 2080

permits expungement if ordered by a court, "[i]t would be unjust for the Court to expect advisors to read the plain language of FINRA Rule 2080 and somehow insinuate that court proceedings for expungement are disallowed." *Id.* at 15. Plaintiff's arguments are unavailing.

Defendant persuasively challenges plaintiff's complaint for failure to identify a cause of action against FINRA entitling him to expungement relief. Under well-established principles, "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Absent congressional authorization for private enforcement of federal law, "a cause of action does not exist" and cannot be created by other entities, such as courts or regulators, "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. As the Supreme Court has emphasized, "it is most certainly incorrect to say that language in a regulation [or rule] can conjure up a private cause of action that has not been authorized by Congress." *Id.* at 291.

The Exchange Act, which governs FINRA, establishes "a deliberate and careful design for regulation of the securities industry." *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008). Among its provisions, the Exchange Act imposes an obligation on "a registered securities association, such as FINRA, to 'establish and maintain a system for collecting and retaining registration information,' including 'a readily accessible electronic or other process' to provide prompt information regarding the registration information of 'members,' such as [financial institutions], and their 'associated persons,' such as [the employees of financial institutions]." S*ee Tanjutco v. NYLife Sec. LLC*, No. 23-cv-4889, 2024 WL 4135686, at *9 (S.D.N.Y. Sept. 10, 2024) (explaining 15 U.S.C. § 78o-3(i)(1)(A)-(B)). The Exchange Act also requires "[e]ach registered securities association [to] adopt rules establishing an *administrative process* for disputing the accuracy of information provided" under the Act's requirements. 15

U.S.C. § 78o-3(i)(3) (emphasis added); *see, e.g.*, FINRA Rule 13805 (detailing arbitration procedures "appl[ying] to all requests to expunge customer dispute information from the CRD system").

Notably absent from the Exchange Act is any suggestion that a regulated party has a right to take private action against a registered securities association for information the association maintains pursuant to its duties as a securities regulator.  *See Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 375 (2025) (explaining that a statute must employ "clear and unambiguous 'rights-creating language'" for a court to interpret the statute as creating an individually enforceable right).  As the Second Circuit has observed, "allowing suits against [a SRO] arising out of the [SRO's] disciplinary functions would clearly stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, namely, to encourage forceful self-regulation of the securities industry."  *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 59 (2d Cir. 1996) (internal quotation marks, alteration, and citations omitted).

Accordingly, federal courts have overwhelmingly declined to find the availability of a private right of action against FINRA "for actions taken to perform its self-regulatory duties under the Exchange Act."  *Howes v. FINRA*, No. 18-cv-3094, 2023 WL 2213688, at *4 (D. Md. Feb. 24, 2023).  Instead, the Exchange Act has been interpreted to preclude suits challenging FINRA regulatory actions both under common law, *see, e.g.*, *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F. 3d 110, 114 (D.C. Cir. 2008) ("[C]ourts have consistently found Congress's intent under the Exchange Act precludes common law causes of action, and we agree with the reasoning of our sister circuits."); and under FINRA's own rules, *see, e.g.*, *Howes*, 2023 WL 2213688, at *1 (dismissing expungement claim based in part on allegations that "FINRA's procedure for expunging false information is flawed," because no private right of action existed

under the Exchange Act); *Mohlman v. FINRA*, No. 19-cv-154, 2020 WL 905269, at *4 (S.D. Ohio Feb. 25, 2020), *aff'd on other grounds*, 977 F.3d 556 (6th Cir. 2020) ("[C]ourts routinely hold that no private right of action exists against a self-regulating authority like FINRA for its regulatory acts."); *Smith v. INTL FCSTONE Fin., Inc.*, No. 19-cv-00235, 2020 WL 908437, at *4 (S.D. W. Va. Feb. 25, 2020) (citing cases holding that "FINRA itself provides no private right of action"); *Lobaito v. FINRA*, No. 13-cv-6011, 2014 WL 4470423, at *7 (S.D.N.Y. Sept. 9, 2014), *aff'd on other grounds*, 599 F. App'x 400 (2d Cir. 2015) ("It is well established in the Second Circuit that no private right of action exists for FINRA's actions taken in furtherance of its regulatory duties, including enforcement of its own rules."); *Dobbins v. Nat'l Ass'n of Sec. Dealers*, No. 5:06-cv-2968, 2007 WL 2407081, at *3 (N.D. Ohio Aug. 22, 2007) ("[Plaintiff] has failed as a matter of law to establish a legal claim for expungement of his record in the CRD database under [FINRA] rules, or for an exemption from the application of those rules."); *In re Olick*, No. 99-cv-5128, 2000 WL 354191, at *4 (E.D. Pa. Apr. 4, 2000) (agreeing with "the weight of persuasive authority" that a party "may not maintain a private cause of action against [FINRA] under the Exchange Act, or at common law, for regulatory actions taken by [FINRA]").  *But see Reinking v. FINRA*, No. 11-cv-813, 2011 WL 13113323, at *3 (W.D. Tex. Dec. 1, 2011) ("[T]he Court finds it has the power to order an expungement of a CRD record.").

Given this statutory backdrop, plaintiff's invocation of "FINRA's own Rule 2080," Pl.'s Opp'n at 1, as a cause of action supporting expungement relief falls short, for two reasons.

First, setting aside the text of Rule 2080, even *if* Rule 2080 purported to create a freestanding "expungement" private right of action against FINRA, no viable claim would be available because FINRA cannot create a cognizable cause of action not otherwise authorized by Congress.  As the Supreme Court has explained, the argument that a "regulation[] [or rule]

contain[s] rights-creating language and so must be privately enforceable . . . skips an analytical step," because although "[l]anguage in a regulation [or rule] may invoke a private right of action that Congress through statutory text created, . . . it may not create a right that Congress has not." *Alexander*, 532 U.S. at 291 (emphasis omitted). Plaintiff focuses on FINRA Rule 2080, but plaintiff tellingly cites no provision of the Exchange Act authorizing suit against FINRA for acts taken pursuant to its statutory obligation to "establish and maintain a system for collecting and retaining registration information."[1] 15 U.S.C. § 78o-3(i)(1)(A). As explained above, FINRA rules standing alone cannot create a private right of action entitling plaintiff to expungement relief in federal court.

For the same reason, plaintiff's passing arguments with respect to the comments accompanying FINRA's rules also lack merit. *See, e.g.*, Pl.'s Opp'n at 1 ("FINRA has also stated affirmatively that a broker can seek expungement of customer dispute information by going 'directly to court.'") (quoting SEC Release No. 34-88251 (Feb. 20, 2020))); *id.* at 4 (noting that the National Association of Securities Dealers ("NASD"), now known as FINRA, had indicated compliance with "court-ordered expungements" in a notice discussing court confirmations of arbitrator-ordered expungements (quoting NASD Notice to Members No. 99-54 (Jul. 1999))); *id.* ("NASD . . . expunges information from the CRD system when ordered to do so by a court of competent jurisdiction." (quoting NASD Notice to Members No. 99-09 (Feb. 1999)));

---

[1]    To the extent plaintiff argues that Section 27(a) of the Exchange Act provides a cause of action by "explicitly grant[ing] federal district courts 'exclusive jurisdiction' over 'all *suits in equity* and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder,'" Pl.'s Opp'n at 1 (emphasis in original) (quoting 15 U.S.C. § 78aa(a)), that argument misses the mark. The Supreme Court has been clear that "Section 27 grants jurisdiction to the federal courts and provides for venue and service of process. It creates no cause of action of its own force and effect; it imposes no liabilities." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 (1979); *see also Alpine 4 Holdings Inc. v. Finn Mgmt. GP LLC*, No. 21-cv-01494, 2022 WL 1188073, at *2 (D. Ariz. Apr. 21, 2022) ("[A]s the text of the statute makes clear, § 27(a) does not create a private right of action for every provision of the Act; it merely gives the district courts exclusive jurisdiction in the enforcement of any private rights of action arising from those provisions.").

*id.* ("[R]egistered persons seeking expungement relief need only obtain a court order to expunge or court confirmation of an arbitration award granting expungement relief." (emphasis omitted) (quoting SEC Release No. 34-48933 (Dec. 24, 2003))). As with FINRA's rules, none of FINRA's comments can independently create a cause of action where Congress has not.

Second, in any event, plaintiff misreads Rule 2080 as "allow[ing] for the pursuit of expungement through court." Pl.'s Opp'n at 8. Turning to the text, Rule 2080(a) provides that "[m]embers or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief." Rule 2080(b), the next subsection, further requires that a party "petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents unless this requirement is waived" subject to certain enumerated conditions.

Nothing in the language of Rule 2080 confers a right to seek expungement in federal court; Rule 2080 merely provides assurance that FINRA will comply with court orders for expungement when such orders are obtained, for example, as part of an arbitral award and properly presented to FINRA. Neither Rule 2080(a) nor (b) is "phrased in terms of the persons benefited" with "rights-creating, individual-centric language." *See Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (internal quotation marks omitted). Rather, Rule 2080(a) simply serves to cabin when FINRA may expunge customer dispute information from CRD, limiting the relief to instances in which "a court of competent jurisdiction" orders FINRA to do so by "directing such expungement or confirming an arbitration award containing expungement relief." As to which courts would be "competent" to hear such claims, or under what criteria an expungement

claim is to be evaluated, Rule 2080(a) offers no indication.  *See Doe v. FINRA*, No. 13-cv-06436, 2013 WL 6092790, at *2 (C.D. Cal. Nov. 19, 2013) ("Rule 2080 does not provide any substantive standard for determining whether expungement is appropriate or required.").  Nor does Rule 2080(a) create a right to court-ordered expungement by affirmatively stating, for example, that an associated person "shall" be able to seek expungement relief in federal court.  *Cf. Sandoval*, 532 U.S. at 288-89 (recognizing implied private right of action under Section 601 of Title VII, which provides in relevant part that "[n]o person . . . shall  . . . be subjected to discrimination"); *Cannon v. Univ. of Chicago*, 441 U.S. 677, 709 (1979) (similar under Title IX).  Rule 2080(b), in turn, is merely "a procedural rule that does not provide any substantive criteria as to when expungement would be appropriate."  *Lickiss v. FINRA*, 208 Cal. App. 4th 1125, 1135 (2012) (emphasis omitted).

Accordingly, other courts have persuasively read Rule 2080 as concerning only process and remedy—requiring FINRA to expunge when presented with a court order—but creating no independent cause of action.  *See Tanjutco*, 2024 WL 4135686, at *12 ("Although Rule 2080(b) permits FINRA to be named as a respondent with respect to that claim, it does not create a private cause of action for expungement."); *Messinger v. JPMorgan Chase Bank, N.A.*, 2014 WL 904528, at *2 (S.D.N.Y. Mar. 7, 2014) ("FINRA Rule 2080 does not provide Plaintiff with a free-standing 'expungement' cause of action.  It instead appears to provide procedures for obtaining expungement as a *remedy* . . . ." (emphasis in original)).

Plaintiffs' citations to non-controlling cases from other courts purportedly "recogniz[ing] the inherent equitable power to expunge public records" are unpersuasive.  *See* Pl.'s Opp'n at 3 (string cite).  In *Lickiss v. FINRA*, 208 Cal. App. 4th 1125 (2012), the plaintiff there brought a cause of action for expungement based on California state law, whereas plaintiff here raises no

comparable state law claim. In *Reinking v. FINRA*, No. 11-cv-813, 2011 WL 13113323 (W.D. Tex. Dec. 1, 2011), a district court in Texas appeared to find an "independent power" to grant expungement relief in a suit against FINRA, yet identified no section of the Exchange Act or other source of law providing a cause of action and did not grapple with the overwhelming weight of countervailing authority finding no private right of action against FINRA for its regulatory acts. Finally, plaintiff's citations to other state court decisions about expungement relief in situations unrelated to FINRA or the Exchange Act have no bearing on whether a cause of action exists in this case. *See* Pl.'s Opp'n at 3 (citing *State v. Schultz*, 676 N.W.2d 337 (Minn. App. 2004) and *State v. Ambaye*, 616 N.W.2d 256 (Minn. 2000), both concerning expungement of criminal records; and *State ex rel. Cunningham v. Davis*, 123 Fla. 41 (1936), concerning whether courts can "expunge from the range of their judicial observation" certain legislative journal entries).[2]

In short, neither the Exchange Act nor FINRA's own rules provide plaintiff a cause of action against FINRA for expungement of customer dispute records.

### 2. *Claims for Equitable Relief, Declaratory Relief, and a Permanent Injunction*

Plaintiff's remaining arguments—that the court's "inherent equitable power" "linked" together with plaintiff's "requests for a declaratory judgment and permanent injunction" constitute causes of action—also fail. Pl.'s Opp'n at 13-14.

---

[2] Plaintiff protests that "if the Court decides to agree with FINRA in this instance, then that would functionally eliminate [his] – and other advisers' – ability to seek expungement in court altogether." Pl.'s Opp'n at 6; *id.* at 7 (stating that in *Sum-Slaughter v. FINRA*, 320 A.3d 313 (D.C. 2024), the highest court of the District of Columbia held that "claims for expungement cannot be brought through state courts in the District of Columbia"). Plaintiff also levies various criticisms at his available remedies, challenging the arbitration process and questioning the efficacy of adding a broker comment to his BrokerCheck report. *See id.* at 5-6. The fact that a person may have suffered harm, however, "does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (citation omitted). "Although a person regulated by an SRO might find the prescribed remedies incapable of fully assuaging the reputational harm he suffered as a result of the SRO's regulatory and disciplinary conduct, he chose to accept those limitations on recovery by affiliating himself with an SRO-governed firm." *Turbeville v. FINRA*, 874 F.3d 1268, 1277 (11th Cir. 2017).

With respect to the court's equitable powers, although "expungement is a potentially available *remedy* for legally cognizable injuries," *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015) (emphasis in original), "identifying a remedy is not stating a claim," *id.* (citing *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 700 (5th Cir. 1997) ("We should not elevate a mere remedy to the status of a right.")). The "question whether a litigant has a 'cause of action' is analytically distinct and prior to the question of what relief, if any, a litigant may be entitled to receive." *Davis v. Passman*, 422 U.S. 228, 239 (1979). Plaintiff's request for equitable relief for expungement thus asserts a remedy but fails to identify a cause of action supporting his entitlement to relief. *See, e.g.*, *Hendrix v. Napolitano*, 77 F. Supp. 3d 188, 196 (D.D.C. 2015) ("[Plaintiff] asserts a claim for equitable relief in Count V. Equitable relief, however, is a form of relief and not a cause of action. . . . The Court, therefore, dismisses Count V for failure to state a claim upon which relief can be granted." (footnote omitted)); *Hedgeye Risk Mgmt., LLC v. Heldman*, 271 F. Supp. 3d 181, 191 (D.D.C. 2017) (granting motion to dismiss for failure to state a claim as to "an equitable remedy," treating the claim instead as "part of [plaintiff's] request for relief").

"[D]eclaratory and injunctive relief" are similarly "forms of relief, not sources of legal entitlement." *Town*, 2025 WL 1446027, at *1; *see also Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("Nor does the Declaratory Judgment Act [], 28 U.S.C. § 2201, provide a cause of action. It is a well-established rule that the Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, 'the availability of declaratory relief presupposes the existence of a judicially remediable right." (internal quotation marks and alteration omitted)); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("It goes without saying that an injunction is an equitable remedy."); *Base One Techs, Inc. v. Ali*, 78 F. Supp. 3d 186, 199 (D.D.C. 2015)

("Injunctive relief . . . is not a freestanding cause of action, but rather—as its moniker makes clear—a form of relief to redress the other claims asserted by Plaintiff.").

Plaintiff's complaint, therefore, has not alleged any cognizable cause of action and defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) must be granted.

### B.    Request for Leave to Amend Complaint

Plaintiff cursorily requests that "if the Court finds that, despite FINRA Rule 2080, FINRA should not be named to expungement litigation – Mr. Tuberosa should be permitted to proceed with his claim for expungement against whomever the Court deems to be the proper defendant party." Pl.'s Opp'n at 15. Plaintiff's request is denied.

"While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994)). In *Martin-Baker Aircraft Co.*, for example, a plaintiff seeking amendment "offer[ed] to add hundreds of pages and write a 'massive complaint,'" yet never indicated "how such added verbiage would yield a successfully stated . . . claim." *Id.* Accordingly, the D.C. Circuit held that the plaintiff's "failure to articulate to the district court anything more than a bare request to amend his complaint" warranted affirmance of the district court's dismissal with prejudice. *Id.*

Plaintiff here similarly offers nothing more than a "bare request" to amend his complaint. *See id.* Further, plaintiff's indication that he will join "whomever the Court deems to be the proper defendant party," Pl.'s Opp'n at 15, misunderstands the rules governing amendment of a complaint: The *plaintiff*, not the Court, bears the burden to articulate "specifics" as to "the particular grounds on which amendment is sought." *Martin-Baker Aircraft Co.*, 389 F.3d at 1259;

*see also* LCvR 7(i) ("A motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading *as amended*." (emphasis added)).  Plaintiff here "never tendered a proposed amendment" as to who precisely he would choose to join as a defendant.  *Martin-Baker Aircraft Co.*, 389 F.3d at 1259.  Nor has plaintiff explained why a different defendant would yield a successful claim.  Plaintiff's request for leave to amend his complaint is therefore denied.

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint with prejudice under Rule 12(b)(6), ECF No. 16, is GRANTED.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  January 5, 2026

_____
**BERYL A. HOWELL**
United States District Judge